at all, oral argument by J. C. Cisneros Albershine, John Yaklovich, Court of Appeal. Thank you. And thank you, members of the Court. May it please the Court, my name is John Yaklovich. I represent the two appellants in this appeal, Larry Matthew Gandy and his son, who was 16 years old at the time of the underlying events and who is referred to as DG. I'd like to reserve about four minutes rebuttal time today. Thank you. If it pleases the Court, the undisputed procedural facts are really fairly short and clear and I think there's a well-established body of law that applies to those facts. The undisputed facts are that neither Larry Matthew Gandy nor DG was ever served with summons and a copy of the complaint in accordance with the dictates of either Federal Rule 4 or, because the Federal Rules defer to state law for purposes of service, Ohio Rule of Civil Procedure 4. What happened was that the third defendant whom I represented, or came to represent in this case at a later point in time, Alyssa Gandy, who was the wife of Larry Matthew Gandy and the mother of DG, was served with summons and a copy of a complaint at a nursing home, where she worked on the night shift as a nurse, and according to returns of service that were filed by plaintiff's counsel, he indicated that he also gave her copies of summonses and complaints for both Larry Matthew Gandy and DG. But giving Mrs. Gandy a copy of a summons and complaint for Mr. Gandy at her place of work and for her son at her place of work clearly doesn't comport with either the Federal Rules governing service or process or the state rules. And it's very, very well established that without acquiring personal jurisdiction over the person of a defendant in a civil action, a court cannot render a valid binding judgment against that person. Yes, Your Honor. Can the person confer jurisdiction voluntarily by appearing as Mr. Gandy did? Well, yes, a person can certainly waive the defense of lack of service, insufficiency of service of process, but that requires voluntary and extensive participation in the underlying litigation. That's the issue, is whether it was extensive then, right? Yes. Wasn't it extensive? Well. It was pretty extensive. I mean, he said, can I talk? And then he talked and made arguments. Well, Judge. Is that true? Judge Rogers, he appeared at the default judgment damages hearing for Elisa Gandy, and he spoke for perhaps one and certainly less than two minutes at that default judgment damages hearing. How long was the damages hearing? I'm going to ballpark it. I would say it was about 45 minutes long, but I was not there with a watch. I've simply reviewed the sentences that Larry Matthew Gandy uttered on the record, and I come up with perhaps a minute, perhaps two. At the time, Mr. Gandy. Go on for paragraphs according to the quotes I have here. I mean, he says there's more. He talks about whether it was bad judgment, it was stupid, and he apologized. Is this just sort of a judgment between us or the trial court as to whether that was extensive enough? Is that what this appeal is about then? I don't think that it boils down to that, no. The U.S. It seems to. Well, Your Honor, let me accept the premise that it does so for Larry Matthew Gandy. Let me suggest, if I may for a moment, DG, their son, was not at that hearing. Obviously, he never spoke at that hearing. Federal Rule 17c2 requires that a minor who is unrepresented by counsel must have a guardian ad litem appointed for him by the court, or the court must enter some other appropriate order. Could I ask a practical question which may not resolve any of the legal issues, which is if we were to say there was no jurisdiction or there was no sufficient service over the son, but there was over the father and, of course, over the mother, is there a difference in the amount of money that the family as a whole owes? I mean, is this a joint and several judgment or is this a several judgment? I'm asking you the technical question about the dollars. I'm not sure if I have an exact answer for that. Yes. I mean, as I say, I'm not sure it makes a difference, but I'm just curious about whether this isn't a tempest in the teapot as to which member of the family owes the money, but the same amount of money is owed. Is that the case? Well, what the case is, is that… You don't know, then, is that… I don't have an answer, and I think the only way to actually get an answer, Your Honor, would be for the Gandy family to confer and to consult with me so that I could understand their answer to that question. Well, didn't I thought, and I'm just going from memory, that the judge as to the son said compensatory damages would be duplicative, but he assessed $5,000 in punitive damages. That's my recollection. That was at a subsequent hearing with regard to the Fair Housing Act issue, which apparently everyone except myself felt down at the trial court level had not been part and parcel of the original default judgment. And what happened, again, is that a motion for default judgment got filed only against Elisa Gandy. As we know, Larry Matthew Gandy showed up at the hearing for damages on that. By that time, though, you'd entered a general appearance, which included appearing for the son. Oh, oh, oh, no, no, no. Your Honor, all of this happened six months before I had met the Gandys, or five months before I had met the Gandys. The $5,000 judgment had... Oh, no, the $5,000 judgment happened after I had entered my appearance, but the much earlier judgment and all of my jurisdictional arguments came in after the original default judgment. I was just trying to get a feel of the practical scope of the arguments you're making as opposed to the technical scope. And, of course, we're a court. We've got to apply the law. We'll apply the technicalities. But as a practical matter, at least all but the $5,000, is it joint and several, or is it several? You don't even have a position on whether it's divided up that way? It is joint and several with respect to the... it still remains with the other two members of the family. So the family is on the hook, under your theory, for the same amount of money. That may or may not be what we have here, Your Honor. Why can't we figure out whether it is or not? As you say, all the facts are there. I mean, there's no more facts to go back and... Your Honor, you're asking me do we treat that family unit as one merged economic unit? No, I'm not asking... Or are they, in fact, separate, I believe? No, I don't mean to ask that. I'm talking about the effect of the judgment. Is it a joint and several obligation, or is it a several obligation? That has nothing to do with treating a family. It is a joint... It has to do... You could have three non-family members and still ask the question whether it's joint or several. Your Honor, it's a joint and several judgment as to the initial, I will say, $12,500 worth of compensatory damages and $26,700 worth of attorney fees. So it's joint and several as to them. Yes. And then there's the $5,000, which is a different issue. That is solely against DGS. That was entered after you had entered a general appearance. Well, to say I entered a general appearance... You entered an appearance, which may or may not have been... I think there's a distinction here between entering an appearance on behalf of a defendant before judgment is entered against that defendant, on the one hand, and entering an appearance. And the Riordan case, which follows the Lewis v. IAAF case, points this out. I came into this case long after final default judgment was entered. And I entered an appearance of counsel, and everything I filed with the court contested the court's jurisdiction, except for on this last issue of DG. And the court, in fact, reserved, following a conference with the court, they said, if you address this issue, you're not waiving any of the jurisdictional arguments that you're asserting in this case, and that's a matter of record. Now, and let me point something out. The facts of this case are horrific. If you look at the underlying facts of this case, a 16-year-old kid got drunk, and with an 18-year-old kid, they built a cross. We're familiar with the facts. We've got this technical issue before us. Well, my thought is this, Your Honor. Horrible facts test the mettle of a court. They test the court's willingness. We're not going to decide this case based on how bad those facts are. I have a fear of that, as I had a fear which may well have been borne out at the trial court level, Your Honor. Well, we understand. Do you have any other arguments that deal with the jurisdiction or the service? Well, yes. There simply wasn't service of process against Larry. Right, everyone knows that. Yes. The question is, do some of these other actions make up for that? And if you're talking about actions, are you talking about subsequent ongoing conduct in the underlying trial court case? We're talking about, I think, Mr. Gandy appearing in court, making statements, arguments, cross-examining a witness, making statements on behalf of the son. We're talking about, in part, those actions and whether or not those voluntary actions and that voluntary participation is sufficient to confer jurisdiction over those defendants. Those are the subsequent actions to which we refer. Obviously, the court has a concern about whether that was adequate to confer jurisdiction or perhaps it believes that that did constitute Larry Gandy's submission to the jurisdiction of the trial court, such as to enable it to render a valid judgment against him. My thought is this. This is a construction worker. I think we have your point. Oh, and if my time is up. Thank you. May it please the court. My name is Rafael Davis Williams, and I am counsel for the appellees in this case, William Wells, Priscilla Wells, Jaleesa Gibson, Shanae Gibson, and two minors, J.D.W. and J.W. The essence of the appellant's argument in this case is clear. There are ways for a court to gain personal jurisdiction over a defendant. Service of process is not the only way for a court to gain jurisdiction in the state of Ohio over a defendant. How did the court gain service of process over D.G.? Because there's nothing in the record that suggests that the minor was in court. Certainly. Your Honor, and this actually addresses, I can answer that question and address your joint and several questions as well. The hearing, the damages hearing was under the state statute 2307.70. Under that statute, and I do want to make sure that we get it, and it says any person who suffers injury or loss to a person as a result under this statute by a minor child has a civil action against the parent of the minor child and may recover an action in compensatory damages not to exceed, and it goes through that. How is that in any way responsive to Judge Donald's question about D.G.'s service against D.G.? That's a statute which makes his parents liable. Well, because we had jurisdiction over, because we had gained service over Mrs. Gandy, his mother, under this statute, the parents. The liability of the parents means that there's service over the child? Yes. Your Honor, may I continue? Yeah. This is the verbatim from the statute. A parent and the parent's minor child are jointly and severably liable as specified in this division for injury or loss to a person. You've still got to sue them though, right? They're not liable before you sue them. Actually, that's correct, but under the. . . We brought under this vicarious liability, under the statute, under 2307.70, if you have a claim against the child. . . If you have a claim against the parent, you don't need to serve the child? Right, Your Honor, and that's what. . . Do you even argue that in your briefs? I believe we included that statute. . . Do you make this argument in your briefs? Regarding D. . . Regarding the fact that this statute confers service when there's no service just because you served someone else over whom there's joint and several liability under the statute? No, Your Honor. No, no, no. That's not what we're. . . That's not what I'm arguing. What we're saying is. . . Then I'm losing what you're arguing, forgive me. I just don't understand how a statute which confers liability can mean that one of the persons who might be jointly liable if you sue them and recover doesn't have to be served. Well, no. . . Well, it's not necessarily that that person doesn't have to be served, but. . . Well, then how is this person served? That's your question. Because under that statute, a minor means a person who is under the age of 18 who is not married at the time. At the point that we had service of Mrs. Gandy, she was his. . . There was not a. . . This was the statute imparts liability on the minor, and having service over the parent brings in the minor. Well, assuming that's not persuasive to us, do you have any other argument with respect to the minor? With respect to the minor and service. . . With respect to the liability, whatever it is against the minor, do you have anything other than this statute which makes him jointly liable? I'm sorry, Your Honor, I'm not following your question. If we have a concern with whether the district court had jurisdiction over the minor in light of the fact that the minor was not served. . . The minor was not served, right? And the minor did not appear. The minor was not served and did not appear. Assuming that's the case, normally you would say, well, the judgment against the minor is improper, right? And you're saying, correct me if I misunderstand you, you're saying that the statute which confers liability, which is not a service statute at all, it's not a jurisdiction statute at all, it's just a liability statute, says in certain circumstances there's joint and several liability among the minor and his parents. You're saying that statute is sufficient to, if there's service on one of the persons that the liability statute says there's joint, that that substantive liability means that you don't have to worry about service against the minor. I'm saying, assume for the moment, without deciding, that we're not persuaded by that. Does that mean you lose with respect to the minor or do you have some other argument with respect to the minor? That's my question. Understood. I don't think we necessarily lose. Well, what's your alternative argument? The alternative is that, I think the distinction here is that it's a minor. This wasn't an adult. And under Ohio law, when having jurisdiction for a minor's crime and the parent is also liable, when you . . . Doesn't the service statute deal with the minor as being not achieved the age of 16? I mean, doesn't the service rule in Ohio treat minors as 15 or younger? Yes, Your Honor, but the same statute also says that if the service, dealing with service in particular, that unless the person is unrepresented by a guardian, in this case, or who hasn't appeared, in this case, his mother had appeared and his mother clearly is his guardian. I'm not talking about that issue. I'm just talking about that's an additional limitation on the ability to sue someone, right? But wait just a second because I'm getting confused in all of this, too. I'm confused, too. Because, and I want to try to keep the liability and service separate. Yes, Your Honor. Because you keep leaping forward to liability and getting away from service. But in response to Judge Rogers' question just now, did I understand you to argue that because this person was a minor and because there was no guardian, that somehow the parent's appearance in court as a parent somehow could be tantamount to voluntary appearance of the minor and could confer jurisdiction? No, Your Honor. I want you to just focus on the service side of it. Sure. And what arguments you are saying give this court jurisdiction over the minor for purposes of these actions? As I understand, as we understand service of process statutes in Ohio, an individual who is, and admittedly so, we were unaware of his age at the time. We did not know if he was 16. We didn't know what his age was at the time of service. But under the service statutes as we understand them, a minor in serving, a guardian is necessary, or someone who is a guardian or conservator and a parent is considered to be a guardian in this instance. At least that's what the lower court, that was the lower court's interpretation based on our arguments that an individual who is a minor. Are you arguing that service on the parent constituted service on the minor? Yes. That is essentially what we're arguing. Then what do you do? Pardon me? What do you do with Ohio Rule of Civil Procedure 4.2, which says service of process shall be made upon an individual other than a person under 16 by serving the individual? This person's not under 16. Your Honor. So your whole argument seems to depend on a misreading of the Ohio statutes. We will concede that, Your Honor. Because of his age, we did not know what his age was at the time we assumed him. But knowledge of the age is not what's determined. Absolutely. That's not relevant, right? You're right. So you did have to serve him then under the Ohio statutes. Except at the point that, yes, Your Honor, I'll concede that. You did have to serve him. The Ohio statutes say you have to serve him. You didn't serve him. And so far, your only argument today is that there's joint several liability substantively. So I'm just missing what your argument is with respect to the child. Your Honor, and I apologize for not having the statute in front of me now, and I wish I had that particular statute. It was our reading of the substantive statute that we were going with. That's why I was asking. I guess I understand that argument, but I think it has flaws. And that's why I was asking if you had any other argument or whether you were staking your ground on that argument. We were staking our ground on that argument. I think we understand that argument. Do you have a question, Judge Kline? Well, only this, that getting back to the statute, as a practical matter, these statutes, whether it's the one in Ohio or all over the country, are predicated upon the fact that kids don't have any money. So if you want a damage award, you've got to get it out of the parents. So in a typical case with a statute like this, you might not even bother with the minor because the pocket, if there is one, is the parents on the thing. But that brings me to the question I wanted to ask you. Was I correct in what I said that it appeared that there was a separate $5,000 punitive damage award made against the minor? Yes, Your Honor. You are accurate. So what occurred at this stage where Mr. Gandy interrupted that damages hearing, that was specifically on the state issue. And as opposing counsel mentioned a moment ago, this went on for several months whether or not we were arguing all of the claims. We had state claims and federal claims. The $5,000 punitive damage was under the federal claims because the awards made prior to that were under the state claims. At the time that that $5,000 punitive damage was awarded, opposing counsel had made an appearance, at that time a general appearance, if we argue a general appearance at that time. Well, I don't want to rehash that because his argument is that that was in the nature of a special appearance and he didn't waive the jurisdictional issues. But just so that we're all clear on this, there is a standalone $5,000 award against the minor. Yes, Your Honor. And so if you were, it's not like we're just shuffling money around from, the same money from different pockets or something. If you were to lose today, that $5,000 would be gone. Yes, Your Honor. Okay. And if there are no further questions, Your Honor, I would conclude we would ask that you affirm the decision of the lower court. Thank you. Thank you. Mr. Yakovitch. Thank you. Most, if not all, of the Court's questions have been practical in nature, looking for a practical solution. But there is a real impracticality to saying that when a layperson like Larry Matthew Gandy shows up at his wife's court hearing and is held to have waived or forfeited a lack of jurisdiction defense, he's now on the hook. And the problem is this. So isn't the whole service issue designed to make certain that a person who is sued has notice of the action and an opportunity to appear and defend? By this record, it is clear that Mr. Gandy had notice and afforded himself with the opportunity to appear and make statements and participate. So the harm you argue about a layperson, or you say us taking a practical approach to a layperson, is really not relevant because the whole purpose of service is to give the person notice and an opportunity and have them come before court through a proper procedure and defend the action. Correct? Well, yes, Your Honor, but I don't think that the whole structure of federal and Ohio Rule 4 is just an abstract construct. This Court, other courts have repeatedly held that notice and an opportunity to be heard at a practical level isn't enough, yet still have to follow the rule. And here's the real problem as I see it. Let's say that Mr. Gandy's appearance on that date constituted his submission to the court's jurisdiction. Well, what happened? Didn't that maybe then start the 28-day answer period to run so that he could go back and figure out how to file an answer to the complaint, to set up his defenses if he needed them later? What happened here was, at the conclusion of this hearing, after all of the evidence had been heard and granted after Mr. Gandy had spoken, Mr. Davis Williams said, Your Honor, because we have not served DG or Mr. Gandy, we ask the court to enter judgment against him. Now, Magistrate Judge Abel was a little confused. It's on the record, Your Honor. It's documented in the transcript. He said, because we haven't served them, we're asking the court to enter default judgment. Magistrate Abel then said, and when were they served? Well, what happened was, was that Mr. Davis Williams' then partner, Mr. Spader, had in fact filed returns of service saying that, not that he made good service, but he had filed returns of service saying on June 8th, I gave summons in the complaint for Larry Gandy to his wife where she works. Are you arguing that there was no service right now? Well, no, I'm just trying to clarify a rather odd set of facts. There certainly wasn't, but I'm going back to the practical point. If we deem that Mr. Gandy waived service when he showed at the default judgment hearing, what exactly does that mean? Shouldn't that start an answer period running for him? I mean, it's like this idea, oh, you didn't know what you were doing, we said you waived service. Now you have forfeited not just your service rights under Rule 4, you've forfeited all of your rights under the whole book of civil rules. I mean, that is the net effect of making this judgment. Oh, he spoke at this one hearing, so he's done. He's done because he opened his mouth. I mean, any other litigant has a lot more rights than that. My only point, and I thank you for your indulgence. Thank you. We appreciate your argument. The case will be submitted, and you can dismiss.